The **PEOPLE OF THE STATE OF CALIFORNIA**

v.

The **UNITED STATES.**

No. 49862.

United States Court of Claims.

June 7, 1955.

. Herbert E. Wenig, San Francisco, Cal., for plaintiff. Edmund G. Brown and Miriam E. Wolff, San Francisco, Cal., were on the briefs.

Howard O. Sigmond, Washington, D. C., with whom was Perry W. Morton, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

This is a suit by the State of California to recover the value of the land embraced within certain streets laid out in a subdivision of tide or submerged lands in the Bay of San Francisco. The United States of America took possession of the lands embraced within these streets and the abutting lots under a deed from the Columbia Steel Company dated November 14, 1940.

The question at issue is whether or not title to the lands embraced within these streets passed by this deed. If not, the defendant took the lands shortly after the date of the deed under its power of eminent domain and is liable to pay the owner just compensation therefor.

The first question presented, however, is our jurisdiction to settle the controversy. Defendant says we have no jurisdiction because the suit was not brought within the time specified in the Act under which defendant consented to be sued. Before the Act of February 24, 1855, 10 Stat. 612, the defendant, as the sovereign, could not be sued by any one. By that Act a court was established to hear and determine certain claims against the Government. By the Act of March 3, 1863, 12 Stat. 765, this Act was amended broadening the powers of the court. 28 U.S.C.A. § 2501. Under these Acts the Government consented to be sued in this court in certain cases, but only on the condition that the action be brought within six years from the time it accrued. If not brought within six years, the defendant was immune from suit, as it had been prior to the passage of the Act, and this immunity was against a suit by any one, whether a private individual or State.

These Acts, however, made certain exceptions to the requirement that suit be brought within six years, and there are certain exceptions in the law today. These exceptions relate to claims of married women, minors, idiots and persons beyond the seas. Also, there have been certain decisions of the courts which apparently make exceptions to the time when the statute begins to run. The statute requires that suit be brought within six years from the time it first accrued, but the Supreme Court in United States v. Dickinson, 331 U.S. 745, 67 S. Ct. 1382, 91 L.Ed. 1789, held that, while suit might have been brought at an earlier date, the statute did not begin to run until the extent of the flooding of the lands could be ascertained. This court in Oro Fina Consolidated Mines, Inc., v. United States, 92 F.Supp. 1016, 118 Ct. Cl. 18, certiorari denied 341 U.S. 948, 71 S.Ct. 1015, 95 L.Ed. 1371, postponed the beginning of the running of the statute until the duration of the taking was ascertained.

In the case at bar the plaintiff says that the statute should not begin to run until it had notice, actual or constructive, that the defendant had taken its lands. The statute makes no such exception, but we shall assume for the purposes of this opinion that such an exception should be made; but we do not find it necessary to decide whether or not it should be made, because we think the plaintiff had notice of the taking by the defendant more than six years before it instituted its action.

As stated, defendant acquired the property by deed from the Columbia Steel Company on November 14, 1940, nearly ten years before this action was instituted. This deed expressly conveyed the area included in the streets. It read in part:

"Reference herein to any and all so-called streets is solely for the purpose of description in order to tie the same to the description of all adjacent lands and premises adjoining the lands herein described and shall not be taken as an admission of the existence of any streets whatsoever within the boundaries of the

lands herein described, all as stated in the Grantor's warranties herein set forth, hereby granting, bargaining, selling and conveying the fee simple absolute title to the above described lands, and all improvements thereon, clear of all mineral rights, streets, highways, easements, restrictions, leases, judgments, taxes and assessments, existing or inchoate, liens or encumbrances of any sort at the date of the transfer of the title to the United States."

This deed was duly recorded.

Under a contract dated September 9, 1940, defendant entered into what was called a facilities contract with the Bethlehem Steel Company, providing for the expansion of the shipyard of the Bethlehem Steel Company to include the lands acquired by defendant from the Columbia Steel Company. Pursuant thereto Bethlehem Steel Company went into possession of the lands in suit and erected facilities thereon.

Thus, since November 14, 1940, defendant has been in open and notorious adverse possession of the lands under a claim of right.

Ever since April 27, 1900, when the Pacific Rolling Mill Company conveyed the lands to the Risdon Iron and Locomotive Works, the grantees of the lands have claimed title under deeds which included the streets in question. Thus, for fifty years before the bringing of the present action, parties in possession of these lands have claimed title to the area embraced within the streets. In fact, the streets existed only on paper. They had never been laid out, since the lands were tide or submerged lands.

In addition to the above, one month before the execution of the deed from Columbia Steel Company to the defendant, and apparently in contemplation of its execution, the Board of Supervisors of the City and County of San Francisco adopted Resolution 1376, which "closed and abandoned" all the streets in the area except Massachusetts Avenue and a portion of Twenty-first Street or Shasta Street.

All the foregoing facts we think put the plaintiff on notice that defendant had taken its lands on the date of the deed to defendant and possession of the property by the Bethlehem Steel Company.

Plaintiff, however, says that no one can acquire title by adverse possession against a State and, therefore, a State is not required at its peril to take notice of the possession of its property by any one else. Plaintiff in its brief thus states the rule applicable to private owners. On pages 162 and 163 of its reply brief it states:

"It is frequently asserted to be the general rule that an owner of real property is presumed to know who is in occupancy thereof. This presumption gives rise to the rule that an owner of land has a duty to make reasonable investigation to determine the nature of the occupancy by another party and in the absence of such investigation will be held to constructive notice of facts which could have been discovered by such reasonable investigation. Accordingly, the statute of limitations applicable to actions for the recovery of real property will ordinarily run against an owner even though he does not receive actual knowledge of the hostile claim where he has failed to investigate the nature and extent of occupancy of his property by other persons. This doctrine raises the question whether the plaintiff herein should be held to have had constructive notice of the claims of the United States merely because Bethlehem entered into occupancy of the lands."

However, it says that a State is not concerned about the occupancy of its property until the State is ready to use it itself, because, it says, the State can at any time eject the squatter, however long he may have occupied it; hence it

says that vigilance is not required of the State and it is not affected by adverse possession even though it be open and notorious.

We think this is perhaps a correct statement of the law, but it does not apply as against the United States. The United States may go into possession of the property of a State and may successfully resist an action by the State to eject it. Therefore, if the occupation is by the Federal Government, the State is obliged to take notice of it, and, hence, it follows that if the State learned that any one is occupying its property, it must ascertain, at its peril, whether or not they occupy it for and on behalf of the United States, or under a claim of right acquired from the United States.

Here the occupancy was by one under the authority of the United States, which claimed title under a duly recorded deed. The State could not ignore such occupancy. Possession by one under the authority of the United States is a peril against which the State must guard, just as an individual must guard against adverse possession by anyone.

█ It is well settled that the Federal Government may acquire by eminent domain property already devoted by a State to a public use. United States v. Carmack, 329 U.S. 230, 67 S.Ct. 252, 91 L.Ed. 209; State of Oklahoma ex rel., Phillips v. Guy F. Atkinson Co., 313 U.S. 508, 534, 61 S.Ct. 1050, 85 L.Ed. 1487; Wayne County, Ky., v. United States, 53 Ct.Cl. 417, affirmed 252 U.S. 574, 40 S.Ct. 394, 64 L.Ed. 723.

In the fifty years before this suit was brought, five deeds were recorded granting title to the lands claimed by plaintiff. Plaintiff might have disregarded them all, except the one conveying title to the United States, but it was obliged to take notice of the possession of the property under this one because the United States had the right to acquire even property devoted by the State to a public use; and, hence, the State could not sit back and wait until it decided to use the property and then eject the United States.

Therefore, the failure of the State to bring its suit within six years from the time the United States recorded its deed to the property and the Bethlehem Steel Company went into possession under it bars it from suit in this court.

█ It is settled that the six-year statute of limitations on the filing in this court of a petition on a claim against the United States is applicable to a claim by a State. United States v. Louisiana, 127 U.S. 182, 192, 8 S.Ct. 1047, 32 L.Ed. 66.

█ Besides, by the several Acts authorizing grants of these tide and submerged lands, the dedication of streets were called for, and the maps filed pursuant to these Acts laid off these streets. By the California statute of March 30, 1868, establishing a Board of Tide Land Commissioners, it was directed that the lands be surveyed and maps prepared "exhibiting all the municipal subdivisions, streets, alleys, blocks, squares and lots," and they were authorized to sell the lots, "reserving so much thereof for streets * * * as in their judgment may be required." This was done, and the lots abutting on the streets in question were sold. Authority over the streets reserved was vested in the City and County of San Francisco by the Legislature; hence, notice to the City and County of the taking by the defendant of the land embraced within the streets was notice to the State.

The resolution of the Board of Supervisors of the City and County of San Francisco, closing and abandoning these streets, was no doubt induced in large part by the fact that the street areas had been included in deeds to the property for forty years and no street had ever been opened in them, and no doubt also in contemplation of the deed by the Columbia Steel Company to the United States. At any rate, this deed to the United States followed the passage of this resolution by a month.

We cannot escape the conclusion that the City and County had notice of the deed to the United States and that this deed included within its grant the lands embraced in the streets. Notice of these facts by the City and County was notice to the State.

Counsel for both parties have filed excellent briefs on the merits, from the reading of which we have derived pleasure and profit. We regret that authority has not been granted us to decide the issues presented.

Plaintiff's petition will be dismissed on the ground that its action is barred by the statute of limitations.

JONES, Chief Judge, and LARAMORE, MADDEN and LITTLETON, Judges, concur.